IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **GREGORY HAYES,** | Case Number 4:16 CV 1313 |
| Petitioner, | Judge Jack Zouhary |
| v. | REPORT AND RECOMMENDATION |
| **STEVEN MERLAK,** | |
| Respondent. | Magistrate Judge James R. Knepp II |

### INTRODUCTION

This cause is before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) for findings of fact, conclusions of law, and recommendations.

Gregory Hayes, a *pro se* federal prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Hayes contends that his due process rights were violated when he was expelled from the Residential Drug Abuse Treatment Program at the prison, resulting in the lost of his eligibility for a sentence reduction under 18 U.S.C. § 3621(e)(2)(B).

Hayes alleges his removal from the program was arbitrary because it occurred twelve days prior to his graduation and he did not receive a disciplinary report to justify his expulsion. He argues his expulsion from the program and the loss of early release eligibility also violated his equal protection rights, the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–06, and Bureau of Prisons Program Statement 5330.11. (Doc. 1, at 6–8).

Warden Steven Merlak has moved to dismiss the petition for failure to state a claim pursuant to Federal Rule Civil Procedure 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(ii), or in the alternative, for

1

summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 5). Hayes has opposed the motion. (Doc. 6).

### STANDARDS OF REVIEW

A petition for a writ of habeas corpus filed by a federal inmate under § 2241 is proper where the inmate is challenging the manner in which his or her sentence is being executed. *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998).

Regarding the request to dismiss under Rule 12(b)(6), a court's consideration of a motion to dismiss under this rule is limited to the pleadings. References outside the pleadings may convert the motion into one for summary judgment. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). However, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007). Such documents include public records that are not attached to the pleadings. *Barany–Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008); *see also Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 927 (6th Cir. 2013) ("Matters of public record may be considered on a motion to dismiss.").

Because documents, other than public records, have been filed and considered by the Court, the motion to dismiss pursuant to Rule 12(b)(6) will be construed as a motion for summary judgment. *Jones*, 521 F.3d at 562.

Summary judgment is proper where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting a genuine issue of material fact must support the argument either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

support the fact." Fed. R. Civ. P. 56(c)(1). A court views the facts in the record and reasonable inferences which can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). A court does not weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The party requesting summary judgment bears an initial burden of demonstrating that no genuine issue of material fact exists, which the party must discharge by producing evidence to demonstrate the absence of a genuine issue of material fact or "by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986) (internal quotation marks omitted). If the moving party satisfies this burden, the nonmoving party "may not rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir. 2009) (citing Rule 56 and *Matsushita,* 475 U.S. at 586). The party opposing the summary judgment motion must present sufficient probative evidence supporting its claim that disputes over material facts remain; evidence which is "merely colorable" or "not significantly probative" is insufficient. *Anderson,* 477 U.S. at 248–52.

## FACTS

The following facts are undisputed. Congress gave the Bureau of Prisons the authority to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b)(5). As an incentive for prisoners to obtain treatment while in custody, the Bureau has the authority to reduce the sentences of certain inmates who successfully complete the drug abuse treatment program. This early release

provision provides: "The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B).

At issue is Hayes's participation in the program's unit-based component. The unit-based component of the program is available at selected institutions. It is a course of individual and group activities provided by a team of drug abuse treatment specialists and the drug abuse treatment coordinator in a treatment unit that sits apart from the general prison population. The component lasts a minimum of 500 hours over a period of at least nine months. Inmates enrolled in the program are required to complete transitional services in the institution, when sufficient time permits. However, all inmates completing the program are required to complete a community-based transitional drug abuse treatment in a residential re-entry center or on home confinement. 28 C.F.R. §§ 550.53–.56; (Doc. 5-1, at 2–4; Doc. 5-10, at 15).

Program participation is voluntary. Completion of the program requires satisfactory attendance and participation in all program activities, and a passing grade on examinations covering each separate subject module of the program. *See* 28 C.F.R. § 550.53(f); (Doc. 5-10, at 23–24). The Bureau's regulations provide that inmates may be removed from the program because of disruptive behavior related to the program or unsatisfactory progress in treatment. 28 C.F.R. § 550.53(g)(1). Program Statement 5330.11 sets forth the process for intervention and expulsion of inmates from the program. (Doc. 5-10, at 24–25).

An inmate who is expelled from the program may apply for readmission by submitting a written request ninety days after the date of expulsion. Considerations may include the inmate's

participation in the non-residential drug abuse treatment program or drug education. If readmitted to the same or a different program, the inmate will not receive any credit for prior treatment participation. (Doc. 5-10, at 26).

In order to receive a sentence reduction under § 3621(e)(2)(B), eligible inmates must meet the following criteria: (1) were sentenced to a term of imprisonment under either 18 U.S.C. Chapter 227, Subchapter D for a nonviolent offense (or certain D.C. Code non-violent offenses); and (2) successfully complete the program (consisting of the unit-based component, follow-up services in the institution (if time permits), and community-based transitional drug abuse treatment). 28 C.F.R. § 550.53 and .55(a).

On March 24, 2007, Hayes was sentenced in the United States District Court for the District of South Carolina to a 120-month term of incarceration followed by a life term of supervised release for violating 18 U.S.C. § 2252A(a)(5)(B). (Doc. 5-4, at 2–7).

On October 30, 2013, Hayes was found eligible to receive a sentence reduction if he were to complete the program. Hayes signed an agreement to participate in the program. (Doc. 5-12, at 2; Doc. 5-13, at 2–4). By signing the agreement, Hayes acknowledged that he understood he was expected to "participate fully" in all of the treatment activities. (Doc. 5-13, at 2). He also acknowledged that he was "expected to contribute to a positive community by refraining from behaviors which are disruptive to the program or [his] fellow participants", and that he was "expected to follow the expectations, rules, and regulations of" the program. (Doc. 5-12, at 2). Hayes also acknowledged that his failure to follow the expectations, rules, and regulations of the program could result in expulsion and loss of his eligibility for any early release consideration. (Doc. 5-12, at 2–3). On October 31, 2013, Hayes was placed on the program's wait list. (Doc. 5-5, at 2). On

August 21, 2014, Hayes was assigned to the program's housing unit and began attending program meetings. (Doc. 5-7, at 2).

On September 12, 2014, during a program, Hayes was "Pulled Up" by another inmate and the community provided him critical feedback. (Doc. 5-8, at 2). Hayes reacted with inappropriate and disruptive behavior. (Doc. 5-8, at 3). After the Pull-Up section of the meeting, Hayes refused to present the meditation reading that was assigned to him. (Doc. 5-8, at 3).

Hayes was instructed to leave the meeting and told to wait until the meeting was over so he could discuss his issues with the staff. (Doc. 5-8, at 3). After the meeting, Hayes stated he was angry and did not believe he was wrong. (Doc. 5-8, at 3). Hayes indicated he did not believe the staff member was trying to help him and he did not need to hear anything the staff member had to say. (Doc. 5-8, at 3).

On September 17, 2014, Hayes received a formal warning for his behavior. (Doc. 5-8, at 4). The warning contained the following language:

> I UNDERSTAND THAT I MAY BE REMOVED FROM RDAP IF I EXHIBIT ANY FURTHER DISRUPTIVE BEHAVIOR IN THE PROGRAM OR FAIL TO FOLLOW ANY INSTITUTIONAL/RDAP RULES AND EXPECTATIONS.

(Doc. 5-8, at 4). Hayes did not challenge the warning through the available administrative process. (Doc. 5-1, at 3).

On February 9, 2015, Hayes met with a drug treatment specialist after his orientation group to discuss the confusions he had regarding his in-group behavior. (Doc. 5-8, at 6). When the specialist redirected him towards other members of his group and community to resolve his confusion, Hayes stated he had expected more from the specialist. (Doc. 5-8, at 6).

On February 11, 2015, Hayes was charged with refusing to obey an order and insolence. (Doc. 5-14, at 2–5). As a result of these charges, Hayes was temporarily removed from the program housing unit and placed in administrative detention. (Doc. 5-7, at 2).

6

On February 17, 2015, a unit discipline committee convened with Hayes for a hearing regarding the charges. (Doc. 5-14, at 3). The committee notes indicate that although Hayes initially stated a portion of the report was a "partial fabrication", he eventually "owned up" to the charges. (Doc. 5-14, at 3). At the end of the hearing, the committee found that Hayes had committed the prohibited acts as charged. Hayes was sanctioned to the loss of twenty-one days of telephone and commissary privileges. (Doc. 5-14, at 3). Hayes did not challenge the committee's decision. (Doc. 5-1, at 3).

On February 18, 2015, Hayes was returned to the program's unit. (Doc. 5-7, at 2). On this same day, Hayes received another formal warning advising him that due to the incident report and sanctions, his treatment plan would be updated. (Doc. 5-8, at 7). The formal warning again included the following clause:

> I UNDERSTAND THAT I MAY BE REMOVED FROM RDAP IF I EXHIBIT ANY FURTHER DISRUPTIVE BEHAVIOR IN THE PROGRAM OR FAIL TO FOLLOW ANY INSTITUTIONAL/RDAP RULES AND EXPECTATIONS.

(Doc. 5-8, at 7). Hayes did not challenge the formal warning. (Doc. 5-1, at 3.).

On April 14, 2015, during an orientation group, Hayes was cautioned by staff and his peers regarding his disruptive behavior. (Doc. 5-8, at 8).

On April 29, 2015, the treatment team met with Hayes and issued a staff therapeutic intervention because he did not complete an assigned activity. (Doc. 5-8, at 12). It was noted that Hayes's behavior did not reflect a positive attitude of responsibility. (Doc. 5-8, at 12). The intervention advised:

> I understand the receipt of four Therapeutic Interventions for any reason or two Therapeutic Interventions for the same reason will result in a RDAP Warning. Additionally, I understand failure to complete any of the treatment assignments given in this Therapeutic Intervention in their entirety and by the date assigned will result

7

>in further action by the Treatment Team (DAP staff), which will result in a RDAP Warning and may lead to my expulsion from RDAP.

(Doc. 5-8, at 13). Hayes did not challenge the therapeutic intervention through the prison's administrative remedy process. (Doc. 5-1, at 3).

On May 29, 2015, Hayes brought a fellow program community member in for a Pull Up. (Doc. 5-8, at 15). Hayes showed aggressive communication and unwillingness to communicate with a peer. (Doc. 5-8, at 15). Hayes had to be told multiple times to communicate with his peers regarding their behavior prior to "pulling them up." (Doc. 5-8, at 15).

On June 2, 2015, Hayes was counseled by program staff to be open minded to the community and to feedback given by his peers. (Doc. 5-8, at 16). Hayes did not display a willingness to listen to his community or to staff recommendations. (Doc. 5-8, at 16).

On June 3, 2015, Hayes met with the treatment team for his sixty-day review. (Doc. 5-8, at 17). He was verbally counseled on his recent behaviors and lack of willingness to conform to the program. (Doc. 5-8, at 17). Hayes was addressed on his inability to display open-mindedness to feedback from peers and staff. (Doc. 5-8, at 17). He was also addressed regarding his lack of progress in the program and his unwillingness to display clinically-significant change after numerous periods of assistance and feedback from peers and staff. (Doc. 5-8, at 17). Hayes was informed that he was now under review to determine his appropriateness for continued treatment. (Doc. 5-8, at 17). He was advised that he must begin to relate to his community and show significant change to continue in the program. (Doc. 5-8, at 17).

On October 27, 2015, Hayes met with a treatment specialist to request approval for a Pull Up. (Doc. 5-8, at 18). After receiving feedback about the Pull Up, he became aggressive with the staff. (Doc. 5-8, at18). Hayes continually interrupted the specialist who was giving him feedback

8

about his behavior. (Doc. 5-8, at 18). Hayes became increasingly frustrated and angry during the meeting. (Doc. 5-8, at 18).

On November 13, 2015, Hayes attended the community meeting and attempted to participate in a trivia game. (Doc. 5-8, at 19). As part of the competition, Hayes was asked to name the female actors in a television show. (Doc. 5-8, at 19). As he was giving his answers, Hayes began making sexually suggestive comments and gestures. (Doc. 5-8, at 19). The behavior was very disruptive, causing the drug treatment specialist to stop the meeting and direct Hayes to sit down so that the meeting could continue. (Doc. 5-8, at 19).

On November 18, 2015, the treatment team met to discuss Hayes's recent behaviors and continued lack of progress in treatment. (Doc. 5-8, at 20). The treatment team reviewed each warning, therapeutic intervention, administrative notation, and clinical contact. (Doc. 5-8, at 20). The team determined Hayes consistently displayed unhelpful behaviors, which earned him two warnings and a therapeutic intervention. (Doc. 5-8, at 20). It was noted that in the most recent incident, Hayes participated in a community meeting by using inappropriate language and hand gestures of a sexual nature. (Doc. 5-8, at 20). Due to Hayes's lack of progress in treatment, the treatment team decided to expel Hayes from the program. (Doc. 5-8, at 20).

On November 19, 2015, the Drug Abuse Treatment Coordinator entered a Program Discharge Note into Hayes's psychology services record. (Doc. 5-8, at 21). That same day the treatment team informed Hayes that he was expelled from the program. (Doc. 5-8, at 22). Hayes was issued a "Change in RDAP and § 3621(e) Status" form, reflecting his expulsion from the unit-based component of the program and loss of early release eligibility. (Doc. 5-16, at 2). The form noted that Hayes was expelled due to unsatisfactory progress in the program and explained the November 13,

9

2015, incident. (Doc. 5-16, at 2-3). Furthermore, it was noted Hayes's continuing negative behavior reflected the on-going struggles he had demonstrated throughout the program. (Doc. 5-16, at 3).

On December 11, 2015, Hayes submitted a Request for Administrative Remedy with Warden Merlak in which he requested to be reinstated to the program. (Doc. 5-3, at 2). Hayes argued he had a settled expectation that he would complete the program and receive a sentence reduction. (Doc. 5-3, at 2). He argued his expulsion from the unit-based component of the program was arbitrary and capricious because his expulsion was not preceded by disciplinary action for inappropriate behavior. (Doc. 5-3, at 2). He contended his expulsion from the unit-based component violated his due process and equal protection rights. (Doc. 5-3, at 2). He also contended his expulsion violated the APA and Bureau policy. (Doc. 5-3, at 2).

On January 15, 2016, Hayes's Administrative Remedy Request was denied by Warden Merlak. (Doc. 5-3, at 4-5). On February 1, 2016, Hayes appealed Warden Merlak's decision to the Bureau's Northeast Regional Office. (Doc. 5-3, at 6). On March 1, 2016, Hayes's appeal was denied. (Doc. 5-3, at 7).

## DISCUSSION

Hayes contends that his due process and equal protection rights were violated. He argues that he had a "settled expectation of completing" the drug program and receiving a one-year sentence reduction. He contends he was arbitrarily removed from the program without a disciplinary report a mere twelve days before graduation. (Doc. 1, at 7).

Pursuant to § 3621, the Bureau must provide each prisoner the opportunity to participate in residential substance abuse treatment in his place of confinement. *See* 18 U.S.C. § 3621(b), (e)(1). The statute provides that when prisoners successfully complete a drug program, the Director has the discretion to modify the conditions of the prisoner's confinement. *See* 18 U.S.C. § 3621(e)(2).

The statute leaves the decision of whether to grant early release to the discretion of the Bureau. *See Lopez v. Davis*, 531 U.S. 230, 241 (2001). Thus, even where a prisoner successfully completes the program, the Bureau retains the discretion to deny early release. *See McLean v. Crabtree*, 173 F.3d 1176, 1182 (9th Cir. 1999); *Orr v. Hawk*, 156 F.3d 651, 652–54 (6th Cir. 1998).

Hayes's expulsion or removal from the program did not deprive him of either procedural or substantive due process. A prisoner has no liberty interest in discretionary release from prison prior the expiration of his or her sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) (holding "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence"). Nor does a prisoner have a constitutional right to participate in a prison rehabilitation program. *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001).

The statute itself does not implicate a constitutionally-protected liberty interest because it does not mandate a sentence reduction. 18 U.S.C. § 3621(e); *see also Orr*, 156 F.3d at 653. Congress mandated in § 3621 that only inmates who successfully complete the program could be considered for "early release" from confinement. Congress neither defined the term "successfully," nor identified the contours or requirements for prisoner eligibility. "In this familiar situation, where Congress has enacted a law that does not answer 'the precise question at issue,' all [a reviewing court] must decide is whether the Bureau, the agency empowered to administer the early release program, has filled the statutory gap 'in a way that is reasonable in light of the legislature's revealed design.'" *Lopez*, 531 U.S. at 242 (quoting *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995)).

11

Nothing in the statute requires the Bureau to grant an early release to any eligible prisoner. *Orr*, 156 F.3d at 652–53; *Sesi v. United States Bureau of Prisons*, Nos. 99-2243, 99-2434, 2000 WL 1827950, at *2 (6th Cir. Dec. 7, 2000) (holding there is no liberty interest in a reduced sentence). Because he has no protected liberty or property interest in a reduced sentence, Hayes's Fifth Amendment right to due process was not violated by his removal from the program or by the decision to deny him a one-year reduction in his sentence.

Likewise, Hayes was not denied substantive due process. "The interests protected by substantive due process are much narrower than those protected by procedural due process." *Hussein v. City of Perrysburg*, 617 F.3d 828, 832–33 (6th Cir. 2010). Hayes alleges the decision to remove him from the program was arbitrary and capricious, but that action would only deprive him of substantive due process if his participation in the program implicated a fundamental right or if the government's action shocked the conscience. Participation in the program "is not 'so rooted in the traditions and conscience of our people as to be fundamental.'" *Simpson v. Coakley*, No. 4:14–CV–55, 2014 WL 2833088, at *4 (N.D. Ohio June 23, 2014) (quoting *Hussein*, 617 F.3d at 832–33). Thus, to the extent that Hayes asserts his Fifth Amendment procedural and substantive due process rights were violated when he was expelled from the program, he does not allege facts entitling him to relief under § 2241.

Hayes does not allege which constitutional amendments he believes were violated. Respondent asserts that Hayes's equal protection argument would be construed under the Fourteenth Amendment. The Sixth Circuit has explained:

> The Fifth Amendment, of course, does not itself contain a guarantee of equal protection, but instead incorporates, as against the federal government, the Equal

12

> Protection Clause of the Fourteenth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 500, 74 S. Ct. 693, 98 L.Ed. 884 (1954). We evaluate equal protection claims against the federal government under the Fifth Amendment just as we would evaluate equal protection claims against state and local governments under the Fourteenth Amendment. *See United States v. Angel*, 355 F.3d 462, 471 (6th Cir. 2004) (citing *Buckley v. Valeo*, 424 U.S. 1, 93, 96 S. Ct. 612, 46 L.Ed. 2d 659 (1976)).

*Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

The Equal Protection Clause of the Fourteenth Amendment states that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state an equal protection claim, an individual must adequately plead that the government treated the person "'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Center for Bio-Ethical*, 648 F.3d at 379 (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)). The "threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).

The record is void of any evidence that Hayes was subjected to disparate treatment. Prisoners are not a suspect class under equal protection principles. *See Carnes v. Engler*, 76 F. App'x 79, 81 (6th Cir. 2003); *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000). Hayes's equal protection claim is without merit as there is no evidence that the Bureau discriminated against him on the basis of his membership in a protected class. *Carnes*, 76 F. App'x at 81; *see also Swant v. Hemingway*, 23 F. App'x 383, 384 (6th Cir. 2001). Hayes has offered no evidence to create a genuine issue of fact that

13

other prisoners who were making unsatisfactory progress in the unit-based component of the program were permitted to remain in the program beyond eleven months or were granted early releases under § 3621(e)(2)(B). Because Hayes has failed to show that similarly situated prisoners have been permitted to complete the drug program and receive sentence reductions, he has failed to establish a violation of his due process rights.

Hayes also contends the Bureau's actions violated the APA. However, the Sixth Circuit has noted: "As set forth in 18 U.S.C. § 3625, the BOP need not ever comply with the requirements of more formal rulemakings, as the agency is statutorily exempt from the provisions of 5 U.S.C. §§ 554, 555, and 701–706 concerning judicial review and notice and comment proceedings." *Orr*, 156 F.3d at 655 n.1.

As a result of the exemption, courts have held that any substantive decision by the Bureau with respect to a prisoner's participation in a drug program is not reviewable by a court. *Reeb v. Thomas*, 636 F.3d 1224, 1227–28 (9th Cir. 2011) (holding that any substantive decision by the Bureau to admit a particular prisoner into a drug program is not reviewable by the district court); *Payton v. Thomas*, 467 F. App'x 662, 663 (9th Cir. 2012) (relying on § 3625 to find that a district court correctly determined that it lacked jurisdiction to review the Bureau's individualized determination regarding a prisoner). Thus, the Court does not have the authority under the APA to review the Bureau's decision terminating Hayes from the prison's drug program.

Finally, Hayes contends the Bureau violated Program Statement 5330.11. The Bureau's regulations specify that in order to complete the unit-based component of the program, inmates must have satisfactory attendance and participation in all program activities. 28 C.F.R. § 550.53(f). The

14

regulations specifically provide that inmates may be expelled from the unit-based component for disruptive behavior related to the program or unsatisfactory progress in treatment. 28 C.F.R. § 550.53(g)(1). The fact Hayes's expulsion from the unit-based component of the program occurred on November 18, 2015, less than one month from his anticipated completion of the unit-based component, is of no consequence, and does not confer upon him an enforceable expectation of completing the program. The Bureau's regulations and policies grant the staff with the discretion to expel inmates from the unit-based component of the program and deny sentence reductions to inmates who do not successfully complete the program. 28 C.F.R. § 550.53(g)(1); (Doc. 5-10, at 24–26).

Program Statement 5330.11 provides additional details regarding the unit-based component. (Doc. 5-10, at 2). Program Statement 5330.11 explains that the unit-based component consists of a minimum of 500 contact hours, i.e., face-to-face contact between treatment staff and inmate participants, over no less than 9 months of half-day programming. (Doc. 5-10, at 21). There is no provision in the Program Statement which prohibits the staff from expelling an inmate from the program any time prior to an inmate's completion of the unit-based component. 28 C.F.R. § 550.53; (Doc. 5-10).

Hayes's belief that his acceptance into the drug program would automatically result in an early release does not create a protected interest or a settled expectation. "A mere expectation of receiving a benefit is not enough to create a protected interest." *Spruytte v. Walters*, 753 F.2d 498, 506 (6th Cir. 1985). In fact, the regulations expressly contemplate an inmate's removal for unsatisfactory progress in treatment. 28 C.F.R. § 550.53(g)(1) ("Inmates may be removed from the program . . . because of disruptive behavior related to the program or unsatisfactory progress in

15

treatment.").

Hayes's failure to satisfactorily progress resulted in his removal from the program, which is allowed under the regulations. Hayes's clinical notes establish multiple incidents where he exhibited disruptive behavior during group sessions. (Doc. 5-8). He received two formal warnings and one therapeutic intervention. (Doc. 5-8, at 4, 7, 13). Each of these documents warned Hayes that he could be removed from the program. (Doc. 5-8, at 4, 7, 13). Finally, at his sixty-day review, Hayes was told he was under review and that he had to show significant change to proceed in the program. (Doc. 5-8, at 17). Given these warnings, Hayes had no settled expectation of graduating from the program.

Hayes's ineligibility for early release relates only to his expulsion from the program. When Hayes signed the agreement to participate in the program, he acknowledged that he would lose his eligibility for early release consideration if he was expelled. (Doc. 5-13, at 3). Therefore, Hayes's expulsion from the unit-based component of the program, and the resulting loss of eligibility for early release under § 3621(e)(2)(B), did not violate a legitimate settled expectation he had in a sentence reduction under the statute or Bureau policy.

## CONCLUSION AND RECOMMENDATION

Accordingly, the undersigned recommends that Respondent's motion for summary judgment to dismiss Hayes's petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, be granted.

    s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within

fourteen days of service of this notice. Failure to file objections within the specified time *WAIVES* the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).